BATSON *v.* SMITH.

4-5102

Opinion delivered June 6, 1938.

*Ponder & Ponder* and *Arthur L. Adams,* for appellants.

*Richardson & Richardson,* for appellee.

DONHAM, J. On May 9, 1936, Roy Smith, appellee, filed suit for $5,000 in the Lawrence circuit court, eastern district, against C. A. Batson and R. E. Batson, co-partners, doing business as Batson Brothers Construc-

tion Company. It was alleged in the complaint that Batson Brothers Construction Company was engaged in construction work on highway 25 between Walnut Ridge and Paragould, Arkansas; that they had employed Smith to perform manual labor in doing this work; that on April 21, 1936, while acting under the direct orders and supervision of his foreman, Smith was injured; that in obedience to the orders given by the foreman, Smith and three other employees were removing from an excavation a joint of concrete culvert about three feet long and two and a half feet in diameter, outside measurement, as a result of which plaintiff suffered an inguinal hernia on the left side. It was alleged that the injury was caused by the negligence of appellants in ordering Smith and three other employees to lift the joint of concrete pipe and in failing to advise or warn them of its excessive weight and in failing to furnish sufficient help.

Appellants answered, denying every material allegation of the complaint, and pleaded assumed risk and contributory negligence on the part of appellee. The cause was tried November 29, 1937, and a verdict was returned by the jury for appellee in the sum of $1,000. Judgment was rendered upon this verdict and appellants prayed and were granted an appeal to this court.

The record shows that the construction in question was one of the regular WPA jobs and that, under the terms of the contract, appellants were required to requisition their labor through the United States Employment Service. Appellee, Smith, was one of the employees employed through that service. Smith was the only witness on his own behalf as to the facts resulting in his alleged injury. He testified that his crew, consisting of himself and three other men besides the foreman, was directed to dig out and remove a concrete culvert; that they proceeded to do this under the personal direction and supervision of Elmer Franks, the company's foreman; that they had difficulty in removing the second joint; and that they were engaged in prying the joint loose with a 2 x 4. He states that while lifting on this 2 x 4 he felt a pain in his left side which grew worse until he had to quit work. He admits, however, that he worked all of the

remainder of the day on which he alleges he was injured without complaining to his employers or either of them; and that he first mentioned his injury to his foreman the following morning. The foreman, under direction of Reece Batson, one of the appellants, took Smith to a doctor at Paragould for an examination, but the doctor was unable to determine on the first examination that Smith was ruptured. Upon a subsequent examination the physician concluded that he was ruptured and later an operation was performed by other physicians at Paragould, the exact date of the operation not being made clear by the record.

The record shows that Smith had worked on a farm, had at one time hauled ties and had worked a considerable period of time in the construction of a part of this same road for Hartman & Clark, other contractors; and that he had been working for appellants about a month and a half when his injury is alleged to have occurred.

There is no evidence that the foreman, whose name was Franks, gave any specific order or direction to Smith commanding him to do any particular part of the work on the occasion of the alleged injury, nor did he direct him to act in any particular manner. According to all of the testimony, the orders of the foreman were general and directed to the crew as a whole.

There was evidence to the effect that prior to the date of the alleged injury Smith had complained that he had been ruptured hauling ties for one George Creel.

It was shown by the evidence that the foreman, Elmer Franks, had the employees dig the dirt away that covered the joint of concrete culvert, and had them dig down on the side of the culvert nearly to the bottom thereof. He had them break the first joint and throw it out piece at a time. A piece of timber, being a 2 x 4 about ten feet long, was used in trying to loosen the second joint from its position. The end of this piece of timber was thrust into the joint of concrete pipe about half the length of the joint and four employees were lifting up on it. While the employees were thus engaged appellee testifies that the foreman, Elmer Franks,

said: "Get it all together at once. Come on, all at once. I will tell you when to start it. Put it out. I want that out of there." Appellee testified: "We all lifted as hard as we could and when we did I felt a little pain right down in there (indicating). A drawing pain down in my side. And when we did that, all pulled together, well, it came out."

Appellee further testified that this happened about 11:30 on April 21, 1936; that this was the only culvert they had on the job; and that he had never worked around concrete such as that before. He testified that he did not know that a man might get ruptured by straining or lifting too much; that he worked on until 12 o'clock, then slept until one o'clock, and then worked the rest of the afternoon on the culvert; that they got the other joints out just like they got this one out. It wasn't so hard after they had gotten one of them out. After the first one, they dug down more and had more room. It was the second joint that was being removed at the time he alleges he was injured.

It is contended by appellants that the judgment should be reversed for the following alleged errors:

1. The court erred in overruling the motion of defendants for a directed verdict.

2. The court erred in refusing to give instruction No. 1 requested by defendants which would have permitted the jury to consider whether the rupture resulted from a congenital weakness of plaintiff.

3. The court erred in failing to declare a mistrial on the motion of defendants when the plaintiff, on direct examination, fully disclosed that liability insurance was carried.

The main question for our consideration, if indeed it is not the only one, is whether the evidence is legally sufficient to sustain the verdict of the jury. If the record be such that all reasonable men would agree that appellants were in nowise negligent, then, of course, the judgment must be reversed and the cause dismissed. On the other hand, if there is substantial evidence to support the verdict, the judgment based thereon will not be dis-

turbed, unless we find that it must be reversed because of some other alleged error.

It will be noticed that the alleged negligence consisted of three elements: 1. The order given Smith and his three fellow-servants to lift the joint of concrete pipe. 2. The failure of the foreman to advise or warn appellee of the weight of said joint of pipe. 3. The failure of appellants to furnish sufficient help.

We will treat these alleged elements of negligence in reverse order. First, were appellants negligent with respect to the number of employees furnished to uncover the concrete pipe and to remove it joint at a time from its position? The uncontradicted evidence shows that four employees, exclusive of the foreman, Frank, were engaged in this work. They uncovered the pipe by throwing the dirt which covered it aside, and then they dug down on each side of the pipe almost to the bottom thereof. They were ordered to get a piece of timber ten feet long, four inches wide and two inches thick, and to put the end of it into the joint of pipe to about half the length of the joint. Appellee testifies that they were then given the following order by the foreman: "Get it all together at once. Come on, all at once. I will tell you when to start it. Put it out. I want that out of there." Appellee further testified as follows: "We all lifted as hard as we could and when we did, I felt a little pain right down in there (indicating). A drawing pain down in my side. And when we did that, all pulled together, well, it came out."

The evidence most favorable to appellee as to the weight of this joint of concrete pipe was that it weighed 620 pounds. Other evidence was to the effect that it weighed about 400 pounds. The question for our determination in considering the sufficiency of the help is to determine whether there was any substantial evidence in the record from which the jury might have found that the number of employees engaged in the work was insufficient and, if so, whether appellants were negligent in not furnishing a greater number. It will be remembered that this joint of concrete pipe was only three feet in length and two and a half feet in diameter. It seems to

us that, under all the circumstances shown in evidence, four men should have been considered as a sufficient number to dig around this joint of pipe and to remove it from its position. There was nothing in the surrounding circumstances revealed by the record to indicate that any reasonably prudent person under the same or similar circumstances would have thought it necessary to furnish a greater number; and, hence, as to this alleged element of negligence, we conclude that there was nothing upon which the jury might have based a finding in favor of appellee.

As to the alleged element of negligence to the effect that appellants failed to advise or warn appellee of the weight of the joint of concrete pipe, we believe there is nothing to indicate that appellants were negligent. Appellee was an experienced laborer. He had worked on a farm, had at one time hauled ties, had worked a considerable period of time for other contractors on a road construction job, and had been working for appellants a month and a half prior to the date of the alleged injury. Prior to any attempt to remove the second joint of pipe, the first joint had been broken and the broken piece lifted from their position and thrown aside by appellee and his fellow-workmen. He knew the size of the second joint of concrete pipe which he and the other three employees were attempting to remove at the time he alleges he was injured. He knew that concrete was heavy. We believe that reasonable prudence did not require that the foreman advise and warn the employees before they attempted to lift the joint of pipe from its position that same was heavy, nor was there any duty to advise appellee or the others engaged in the work of removing the pipe of the approximate weight of the joint being removed at the time. There is nothing revealed by the record requiring the giving of such notice or warning and nothing to indicate that a failure in this regard could in any sense be regarded as negligent. The rule which must be followed in determining whether appellants were negligent in failing to advise and warn appellee as to the approximate weight of the joint of pipe is that if a man of ordinary prudence under the same or similar circum-

stances would have given the warning, then it was necessary for the foreman in the instant case to have done so. If, on the other hand, a man of ordinary prudence would not have given warning as to the weight of the joint, under the same or similar circumstances, then the failure to give such warning did not constitute negligence. In other words, the answer to the inquiry as to what a man of ordinary prudence would have done under the same or similar circumstances determines the question as to whether the failure of the foreman to give warning was negligence. We think the foreman was warranted in assuming that appellee knew as much about the perils of his employment as he knew—that is, appellee knew as much about the perils of the employment as appellants knew, knowledge of the foreman being attributable to appellants; and when such is the case, there is no duty to warn of such perils.

In the case of *McEachin* v. *Yarborough,* 189 Ark. 434, 74 S. W. 2d 228, this court said:

"It is a fundamental rule in the law of negligence that liability exists when the perils of the employment are known to the employer but not to the employee, and no liability is incurred when the employee's knowledge equals or surpasses that of the employer." Citing 18 R. C. L., p. 548; *Arkansas Smokeless Coal Co.* v. *Pippins,* 92 Ark. 138, 122 S. W. 113, 19 Ann. Cas. 861.

It is true that appellee testified that he had never handled concrete before. Notwithstanding this statement of appellee, we believe that he must have known the approximate weight of a piece of concrete of a given size. He knew it was approximately as heavy as ordinary stone. As heretofore stated, he was an experienced laborer and had done considerable work on construction jobs.

In the Yarborough case above cited, this court said: "A more simple thing than native stone does not exist. Everyone with or without wide experience knows that one native stone may be hard whereas another lying adjacent is harder or softer than the other. We conclude that no duty rested upon the master in this case to examine the stone and determine in advance whether it was

hard or soft, and that no liability can be predicated upon his failure to do so.''

Just so in the instant case everyone with or without wide experience knows that concrete is about of the weight of ordinary stone, and having this knowledge it was wholly unnecessary for anyone to advise or warn appellee as to the weight of the joint of concrete pipe, and negligence, therefore, could not be predicated upon a failure of the foreman to warn him.

The last alleged element of negligence is that the foreman was negligent in giving the order to appellee and his three fellow-employees to lift on the 2 x 4, the end of which had been placed in the joint of pipe, the order being: ''Get it all together at once. Come on, all at once. I will tell you when to start it. Put it out. I want that out of there.'' Was the foreman negligent in giving this order? The purpose of the order was to loosen and dislodge the joint of concrete pipe from its position. As already stated, four employees were engaged in the act of lifting on this 2 x 4 in obedience to said order. The order certainly did not mean that appellee or any of the other employees should exert themselves to the extent that injury would follow as a result. Every laborer knows that, in doing construction work of the nature of that being done by appellee, there are times when an employee will be expected to use his entire strength. Appellee was the largest employee on the job. He weighed approximately 175 pounds, was young and apparently vigorous. Under these circumstances, could it be said that the giving of the order above amounted to negligence on the part of the foreman? The question is, would a reasonably prudent man under the same or similar circumstances have given the order. If so, the foreman was not guilty of negligence. We see nothing whatever in the fact that he gave the order that would constitute negligence. We do not believe it to be an act of negligence to call upon an employee occasionally, when the occasion arises making it necessary, to exert his full strength in the accomplishment of the work in which he is engaged. There was certainly nothing in the situation or surrounding conditions or circumstances

from which the foreman could have reasonably concluded that injury would follow the giving of the order. Since it could not have been reasonably foreseen that injury would be the result of obedience to the direction given by the foreman, the foreman was not negligent in respect to the direction given.

We conclude that there is no substantial evidence shown by the record to support a finding of negligence on the part of appellants as to any of the alleged elements of negligence upon which appellee relies.

It is contended by appellee that a combination of the direct command of the foreman and the alleged inadequacy of force supports appellee's contention that appellants are liable. To this, we cannot agree. For, as we have stated, appellants were not guilty of negligence as to any of the alleged elements of negligence. Therefore, none of said alleged elements standing alone, nor all taken together, can be considered sufficient to entitle appellee to recover. Because of the conclusion we have reached, it is unnecessary to give consideration to the other contentions made by appellants for reversal.

It follows from what we have said that the judgment must be reversed, and, since the cause has been fully developed, it should be dismissed. It is so ordered.