153 So.2d 639

**LOUISVILLE AND NASHVILLE RAILROAD COMPANY**

**v.**

**A. T. BAYLES.**

**6 Div. 794.**

Supreme Court of Alabama.

May 9, 1963.

Lange, Simpson, Robinson & Somerville,
Birmingham, for appellant.

Rives, Peterson, Pettus & Conway,
Birmingham, for appellee.

The trial was again had on Counts A and B as before. Count A charged that the plaintiff was caused to fall or be snatched or jerked from a moving railroad car due to the negligence of officers, agents or employees of defendant or by reason of a defect or insufficiency due to negligence of defendant in maintaining its equipment. Count B charged that plaintiff's injuries proximately resulted from the railroad's negligence in assigning the plaintiff to dangerous work when the railroad knew or should have known that plaintiff was physically unfit to engage in such work.

On the day of the accident, plaintiff had been working on a local freight train for approximately five hours and his train had covered seventy-five miles on the main line. While doing some switching work at Gulfport, Mississippi, he gave the engineer the signal to start the movement of the cars. Both his feet were solidly placed in the stirrup of the last car and he had a good grip on the handhold before the movement began. After he had traveled about fifty feet, he felt a "terrific snatch" and a lick or stinging sensation in the back of his head and he fell. He testified that he did not know whether he lost his balance or was hit by something and he had no positive knowledge of the cause of his fall.

He was taken to a Gulfport hospital and when first seen, he was unconscious and partially paralyzed. In the attending physician's opinion, plaintiff had a cerebral vascular accident, commonly called a "stroke."

## PER CURIAM.

This is an appeal from a verdict and judgment in favor of the plaintiff in the sum of $24,500 in a Federal Employers' Liability Act case. This is the second appeal in this cause.

On first appeal, there was judgment for defendant but we held that the trial court erred in sustaining the defendant's demurrer to Count B of the amended complaint. Bayles v. Louisville & N. R. Co., 272 Ala. 188, 129 So.2d 679.

The evidence in this case is substantially the same as in the first trial, and all of the assignments of error argued in this appeal are concerned with the refusal of the trial court to give certain requested written charges.

Assignment 7 charges error in the failure to give Charge 3, which reads:

"The Court charges the jury that if you believe the evidence in this case you would not be authorized to find in

favor of the plaintiff and against the defendant on account of any alleged defect or insufficiency due to the negligence of the defendant in its cars, engines, track, roadbed, works, machinery, appliances or other equipment."

There was evidence that the movement of the train in which plaintiff was hurt was conducted without the use of air brakes, and that the movement would have been smoother had air been used. This made a jury question as to an "insufficiency," and since the charge included "defect or insufficiency," it was properly refused.

The same argument to sustain Assignment 7, supra, is directed to Assignment 12. We hold that the court did not err in refusing Charge 12.

■ Assignment 13 is based upon the refusal to give Charge 14, pointing out that defendant was not an insurer and liable only for negligence. The principle of law stated in this charge was fairly and substantially covered by the court's oral charge, and no reversible error is shown. Title 7, § 273, Code 1940; Smith v. Lawson, 264 Ala. 389, 88 So.2d 322.

Assignment of error 9 is that the court erred in refusing to give at the request of the defendant the following written charge:

"6. The Court charges the jury if you believe the evidence in this case you should not find a verdict in favor of the plaintiff under Count 'B' of his complaint."

On the first appeal we said that Count B should be construed as charging that the plaintiff's injury proximately resulted from the railroad's negligence in assigning the plaintiff to dangerous work when the railroad knew that plaintiff was physically unfit to engage in such work. It is more correct to say that Count B charges that the railroad knew or *should have known* that plaintiff was physically unfit to engage in such work.

■ What constitutes negligence for the purpose of the Federal Employers' Liability Act is a federal question, not varying in accordance with the different conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept governs. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, 11 A.L.R.2d 252; Louisville & N. R. Co. v McElveen, 270 Ala. 600, 120 So.2d 884.

In Urie v. Thompson, supra, it was said that the coverage of the F.E.L.A. is not restricted to harm inflicted by external, violent or accidental means and that "when the employer's negligence impairs or destroys an employee's health by requiring him to work under conditions likely to bring about such harmful consequences, the injury to the employee is just as great when it follows, often inevitably, from a carrier's negligent course pursued over an extended period of time as when it comes with the suddenness of lightning." (337 U.S. 186–187, 69 S.Ct. 1033, 93 L.Ed. 1282.)

There are federal cases which have held that where a plaintiff can prove that management forced a sick employee, of whose illness they knew or should have known, into work for which he was unfitted because of his physical condition, a case is made out for the jury under the F.E.L.A. Dunn v. Conemaugh & Black Lick R. R., (3d Cir.), 267 F.2d 571; Nuttall v. Reading Co., (3d Cir.), 235 F.2d 546. See also Dunn v. Conemaugh & Black Lick R. R., (D.C.), 162 F.Supp. 324, and Brown v. Pennsylvania Railroad Co., (D.C.), 179 F. Supp. 858.

■■ Bayles, a railroad flagman, started to work for the defendant railroad in 1942. Prior to September of 1952 he lost no time from work because of illness except for a five-week period when he had to take a leave of absence because of a hernia operation. In September of 1952 illness forced Bayles to take a leave of absence which lasted until about December

10, 1953. During that time Bayles was hospitalized on three occasions. He suffered with anemia, prostate trouble, a liver involvement, hardening of the arteries, low blood pressure, and heart trouble. On or about December 1, 1953, after being advised by his personal physician that he might seek reemployment, Bayles made application to the defendant railroad for work. He was ordered to submit to a strict physical examination by a doctor in the employ of the defendant. Bayles advised the doctor of his many infirmities. Following an examination, the doctor advised Bayles that he could return to work.

Bayles began work on or about December 10, 1953. He was placed on the extra board. He was assigned duties from time to time on passenger, through freight and local freight trains operating out of Mobile. His work when assigned to local freight trains was in connection with the switching of cars at different points between Mobile and New Orleans.

In the early part of 1956 Bayles was "laid off." Shortly thereafter he heard that there was an opening in the railroad yards at Mobile and he made an application for a job there. He was given work in the yards, which he attempted to perform for approximately two months. The work in the yards was in connection with the switching of cars. During the time he worked in the yards he was clumsy and awkward and on occasions fell down while performing his duties. One of his coworkers reported his condition to the yardmaster and on one occasion Bayles suffered a fall in the presence of the yardmaster while attempting to perform his duties. After the two-month period Bayles was removed from his job in the yards. He was later put back "on the road" where again he worked as a flagman on passenger, through freight and local freight trains out of Mobile. This employment lasted for a few months and he was "laid off" again. Bayles then reapplied for work in the yards. He was refused reemployment on the ground that his coworkers had complained of his inability to do the work because of his awkwardness and clumsiness and because they had to look out for his safety.

Later Bayles was reemployed for work on trains traveling between Mobile and New Orleans. He was engaged in switching operations in Gulfport, Mississippi, on November 15, 1956, when he suffered the disability here involved.

Neither Bayles' personal physician nor any railroad doctor had advised the railroad officials of Bayles' inability to perform his duties because of his physical condition. He never protested any job assigned to him or complained of his physical infirmities after reporting back to work in December, 1953.

There is evidence to the effect that Bayles would remove his name from the extra board if he had reason to believe that he was to be called for work on a local freight which required his services in connection with the switching of cars. However, the evidence further shows that if his name had not been removed and he was called to do that kind of work, he was subject to being fired if he did not accept the assignment.

It is insisted that the evidence as summarized above was not sufficient to show that the railroad had knowledge of Bayles' physical infirmities or that it required him to do the work in which he was engaged at the time he suffered the stroke. We do not agree. Under the liberal view which the Supreme Court of the United States has taken in regard to cases brought under the Federal Employers' Liability Act, we feel constrained to hold that the railroad's knowledge, actual or constructive, of Bayles' illness was a jury question. Likewise, we think the evidence to the effect that if he had not accepted the call on November 15, 1956, he would have been subject to being fired also was sufficient to make a jury question as to whether or not he was required to perform the duties in which he was engaged.

■ Since our decision on first appeal, the Court of Appeals of Indiana in the case of Davis v. Louisville & N. R. Co. et al., 132 Ind.App. 419, 173 N.E.2d 749, held the railroad not liable in a factual situation somewhat similar to that presented here. The Supreme Court of the United States denied certiorari. 369 U.S. 820, 82 S.Ct. 828, 7 L.Ed.2d 786. The railroad here insists that the denial of the writ of certiorari by the Supreme Court should be considered by us as an approval of the holding of the Indiana court which we should follow in this case. The Supreme Court of the United States has often stated that the denial of certiorari is not to be construed as an approval of the opinion sought to be reviewed. Moreover, for aught appearing, certiorari was denied by the Supreme Court for the reason that the petition for certiorari failed to comply with the rules of that court or because the Supreme Court of Indiana had been unable to review the holding of the Court of Appeals of Indiana because the proper petition for rehearing was not filed and presented to the Court of Appeals of Indiana in accordance with the directions of the statutes and laws of that state.

■ The doctrine of assumption of risk in F. E. L. A. cases was completely abolished by the 1939 amendment. 53 Stat. 1404; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 58, 63 S.Ct. 444, 446, 87 L.Ed. 610, 612, 143 A.L.R. 967.

In view of the rule of the federal cases heretofore cited, we feel constrained to hold that a jury question was presented under Count B of the complaint and that the trial court did not err in refusing Charge 6 requested by the defendant. Likewise, defendant's requested Charge 15 was refused without error.

Affirmed.

All the Justices concur except MERRILL, J., who dissents.

MERRILL, Justice (dissenting).

There is no disagreement that a jury question was made as to Count A. Even though the evidence was slight, I think it was sufficient to go to the jury.

I cannot agree as to Count B. The mere enumeration of plaintiff's physical troubles suffered from September, 1952, to December, 1953, does not constitute evidence that he continued to suffer from those illnesses after 1953, because his personal physician and the defendant's physician both stated that he was physically able to return to work, he himself felt able to return to work, and he did work for thirty-five months before suffering a stroke.

What was it that the defendant knew or should have known in order to keep him from working on his usual job on the day he had a stroke? Should it have refused to re-employ him after he had been sick even though the doctors said he could return to work? Should it have been able to foretell one month or one week or one day before that he was going to have a stroke? Was it, as his employer, a guarantor that each day he came to work he would not get sick or be seized with some malady while on the job?

The undisputed evidence was that it is not unusual for trainmen to fall in the yard and that other trainmen were clumsy and fell when running.

There is no evidence that plaintiff at any time ever complained of his inability to do the work or that it was difficult for him; or that his personal physician ever told anyone that plaintiff was physically unable to do the work, or that defendant knew that plaintiff was not bidding in jobs on local freight.

Furthermore, the evidence is undisputed that plaintiff was on the extra board and was not required or expected to work on any job which he did not bid in because of his seniority. If his seniority exceeded that of others bidding on any particular job or trip, he got it, but the selection of the

jobs was his and at no time was he required to do any job which he had not voluntarily offered to do, and had bid on.

"[T]he cases uniformly hold an employer, absent contrary knowledge, is entitled to assume that his employee is in good physical condition and not peculiarly subject to any special weakness." Thompson v. Tippit, 300 S.W.2d 351 (Texas Civ. App., 1957), and cases there cited. This principle has no connection whatever with the assumption of risk doctrine which has not applied to F.E.L.A. cases since the 1939 amendment.

It is true that plaintiff testified he would be fired if he did not accept the call to the job, but he also testified that he could go on the "off board" (not subject to call) anytime before he had bid on a particular job. After he had bid in a trip, he was expected to show up for it unless he became sick and his testimony was that he was not sick the morning of the day he had the stroke. He testified that he felt as good as he ever did when he reported for work.

In my opinion, the majority has gone farther than any court in the United States in this decision. The Federal Supreme Court has not yet decided the question but it has refused to review cases where the evidence was stronger than in the instant case, but no recovery was allowed, and the judgment was rendered on appeal. Not one case has been cited by the majority where the facts were similar to those of the instant case.

My research has not been extensive, but the following cases support the view that the general affirmative charge should have been given as to Count B.

In Southern Ry. Co. v. Bell, 4th Cir., 114 F.2d 341 (1940), a judgment was rendered in favor of the administrator of the estate of Seaborn, the deceased employee, who committed suicide while at work by throwing himself in front of a passing train. Liability was based upon the company's negligence in that the foreman "had knowledge that he (Seaborn) was mentally deranged and unable to take care of himself on the day of his death, and yet permitted him to participate in hazardous work on the Railway Company's right of way." When Seaborn reported for work, foreman Gill noticed that he "acted strangely and looked wild;" he asked another hand if Seaborn was drunk but was told that he was crazy; Gill saw he was working in a reckless way and told foreman Spain "that if he, Gill, were in Spain's place, he would send Seaborn home." The appellate court said that while some of Seaborn's actions, which were brought home to his foreman, "were undoubtedly unusual or peculiar, but his conduct evidently did not lead them to fear him on their own account or give them reasonable ground to fear that he himself was in danger of injury or loss of life."

The judgment was reversed and remanded with directions to enter judgment for defendant because it had moved for a directed verdict in its favor during the trial.

In Lowden v. Bowen, 199 Okl. 180, 183 P.2d 980 (1947), an F.E.L.A. case, the employee was injured while pushing a heavily loaded push car and permanently injured his foot. Plaintiff had sustained a previous injury to his foot and had not worked from April 9 to May 1, 1943. He was injured on May 15. His contention was that defendant was negligent in requiring him to operate a defective push car and in failing to provide him with sufficient assistance or additional help to push the car up the particular stretch of track. The facts were undisputed. This particular push car did not operate as easily as the other one used. Plaintiff "did not ask for any help to push the car on this particular occasion, for the reason that he had previously asked for help and the foreman had refused to give him any." When the push car was heavily loaded, it was customary to assign more than one man to push it, but if not heavily loaded, it was considered a one-man job. Plaintiff did not advise his

·superior that the car was too heavy for him to push. The court said the "exercise of reasonable care did not require the foreman to anticipate that plaintiff might injure himself by loading the car too heavily and then attempting to push it by himself." It held that the motion for directed verdict for ·defendant should have been sustained and the judgment was reversed and the cause remanded with directions to dismiss the action.

In Creamer v. Ogden Union Railway & Depot Co., 121 Utah 406, 242 P.2d 575 (1952), plaintiff had a latent rheumatic heart ailment, unknown to him and undetected by a pre-employment physical examination. While icing a dining car he had ·a heart attack. He recovered a judgment in his F.E.L.A. suit. He had worked three years as coach cleaner, partly in icing ·diners manually, which was the hardest job in the yard. It consisted of carrying 100-pound ice blocks up a 15 foot ladder with 15 rungs, leaning against the car, chopping the ice in fist-size chunks and depositing them in holes atop the diner, each diner requiring 9 to 11 blocks. The foreman assigned plaintiff to three diners and on his last trip up the ladder he had a heart at-·tack.

The court said that where "a latent physi-·cal defect is known neither by master nor servant, and the former has taken the pre-·caution to require a pre-employment physical examination which fails to reveal such ·defect, to hold the master liable regardless of such facts, particularly after the servant has iced diners for three years without injury, is to predicate negligence on some elusive quality of clairvoyance quite inconsistent with principles of reasonable foresecability."

It was held "that as a matter of law there was no negligence, and defendant's motion for a directed verdict should have been ·granted." Certiorari was denied, 344 U.S. ·912, 73 S.Ct. 333, 97 L.Ed. 703.

In Thompson v. Tippit, 300 S.W.2d 351 (Texas Civ.App.), cert. dismissed, 355 U.S. 943, 78 S.Ct. 432, 2 L.Ed.2d 423, plaintiff sued under F.E.L.A. to recover damages resulting from a heart attack suffered in the performance of his duties. Plaintiff alleged negligence in the employer's failure to furnish a sufficient force of men to do the work required, wherein he and one other man were required to pull 16-foot rotted railroad ties and replace them with new ones, the ties weighing as much as 500 pounds each. The crew was one man short on the day plaintiff suffered his heart attack, and plaintiff had that day requested at least one additional man to replace the absent member, but the request was refused. Plaintiff was told by the road master to do the work the best he could with the men he had and to get the ties in within four days. Verdict and judgment were for plaintiff in the sum of $72,000.

The court discussed many cases and said:

"Without further detail of the facts, the record shows that the defendant or his predecessor knowingly assigned Mr. Tippit to work on his section on June 27, 1952, which might very well require Mr. Tippit to exert himself to the extent of his full strength in its accomplishment, but there is nothing in the evidence to show any fact from which either Mr. Tippit or his employer had reason to suppose that such exertion, however strenuous, would result in Mr. Tippit sustaining a heart attack and this for the reason that neither knew of the presence of the underlying predisposing condition in Mr. Tippit's arterial system which made heart attack likely from exertion, however severe. * * *

\* \* \* \* \* \*

"From the record before us, we find no support for the jury's finding of negligence, nor can there be unless it be negligence to require a man to exert his full physical capabilities. In Batson v. Smith, 196 Ark. 386, 117 S.W.2d 731, 734, it is said, 'We do not believe it to be an act of negligence to call upon an employee occasionally, when the occa-

sion arises making it necessary, to exert his full strength in the accomplishment of the work in which he is engaged.' However, even if in any view of the record it may be said that the defendant negligently failed to assign a reasonably sufficient force to undertake the work in which the plaintiff was engaged when he had his heart attack, the record is still devoid of any evidence from which it may be fairly said that the defendant was charged with notice of any fact or facts from which *the heart attack* which plaintiff sustained could be anticipated as a result of the work to which he was assigned. * * *"

The court held that the judgment of the trial court should "be here reversed and rendered in appellants' favor."

A case squarely in point is Mercier v. Texas & New Orleans R. Co., 293 S.W.2d 80, (Texas Civ.App., 1956), where the Court of Civil Appeals of Texas had before it an appeal from a directed verdict in favor of the defendant in a F.E.L.A. suit by a section hand who suffered permanent abdominal injuries as a result of doing work assigned him on the day he had returned to work following an appendectomy. The court said:

> "Plaintiff does not claim to have been given any special order to return to work following the noon hour on November 2nd; he merely returned to work when the rest of the crew did and was acting under the general instructions given the crew by the foreman.
>
> \* \* \* \* \* \*
>
> "Notice to the master of the servant's distressed condition is essential in such cases because there is otherwise no occasion for the master to anticipate probable harm to the servant and no duty to relieve the servant from further work or to alter his work-assignment arises. And, except in instances where the distressed condition of the servant is self-evident and of a nature to make it the duty of the master to take the initiative in relieving the servant from further work or in altering the servant's work-assignment, the master is under no duty to so relieve the servant or to change his work-assignment unless the servant either expressly or by implication requests such relief or change. In the absence of such a request there is no occasion for the master to appreciate the gravity of the situation or the seriousness of the servant's distress and no reason why he should anticipate that the servant is threatened with probable harm or injury. Furthermore, until the servant has requested to be relieved from further work or has requested a change in assignment and his request has been refused, or until he has either quit work or has undertaken to do so and has been ordered to continue working and has done so, the master can hardly be said to have done anything or to have refrained from doing anything that can be labeled as negligence.
>
> "Applying these rules to the facts of the case at bar, we are of the opinion that there was no evidence to support any of the plaintiff's allegations of negligence.
>
> "The foreman was not negligent in initially giving the plaintiff the work-assignment he did, because there was no occasion for him to anticipate that plaintiff would probably suffer harm or injury as a result of doing the work. At the time of presenting himself for work in the morning of November 2nd, the plaintiff not only held himself out to the foreman as being physically able to resume work and to perform the ordinary tasks of a section hand but also presented to the foreman a doctor's certificate to that effect. The foreman was justified in the circumstances in proceeding upon the theory that plaintiff was fully recovered from his operation and was subject to be dealt with as a normal, able-bodied man. The work which was assigned plaintiff was

not extra hazardous but was of a nature that enabled him to be his own judge of the extent to which he was willing to exert himself. It was furthermore the same kind of work that was assigned to the other workmen and was of a kind that plaintiff and his co-workers had performed in the same manner numerous times before without out harm or injury to themselves. We think it cannot be said that an ordinarily prudent man would have done otherwise in the circumstances than the foreman did."

In the instant case, plaintiff did not either expressly or by implication, request relief or change from the work he had been doing for three years. There is not the slightest evidence that plaintiff's superior could have foreseen that plaintiff would suffer a stroke because of anything anyone had or had not done previously.

Applying the holdings in these adjudicated cases, I am of the opinion that there was no evidence to support the plaintiff's claim of negligence under Count B, and that the affirmative charge as to that Count should have been given.

A brief reference is made to the Federal cases cited in the majority opinion. In the cases of Dunn v. Conemough Black Lick R. R., 3rd Cir., 267 F.2d 571 and D.C., 162 F.Supp. 324, the employee repeatedly told his employer that he could not do the heavy work assigned to him. In Nuttall v. Reading Co., 3rd Cir., 235 F.2d 546, there was evidence that the employee told his superior that he was sick, but he was compelled or forced by this superior to report for work on the day he was killed. In Brown v. Pennsylvania R. Co., D.C., 179 F.Supp. 858, the employee, as well as his physician, informed the employer that the employee was not physically able to do the required work.

In my opinion, none of these cases are authority for the holding in the instant case.

Based upon the authorities cited in this opinion, I would reverse and remand. I, therefore, respectfully dissent.