AMERICAN MOTORS CORPORATION, Appellant, v. WISCON-
SIN EMPLOYMENT RELATIONS BOARD, Respondent.

*September 12—October 4, 1966.*

238

For the appellant there were briefs by *Philip G. Marshall* and *Stewart G. Honeck,* attorneys, and *Honeck, Mantyh & Arndt* of counsel, all of Milwaukee, and oral argument by *Mr. Marshall.*

For the respondent the cause was argued by *Beatrice Lampert,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILKIE, J.   The principal issue raised on this appeal may be stated as follows:

Does federal labor policy prohibit states from public enforcement of collective-bargaining agreements through state unfair labor practices proceedings before a state administrative agency?

### *Jurisdiction of WERB as Administrative Agency.*

In 1947, Congress enacted the Taft-Hartley Act.[1] One of the basic provisions of the act was sec. 301, which permitted the enforcement of collective-bargaining agreements in federal court through suits initiated by either the union or the employer.[2] Congress felt that statutory recognition of the collective-bargaining agreement as a valid, binding, and enforceable contract was a necessary and logical step.[3] Under the law existing in a majority of states, suits for breach of contract against unions were very difficult to prosecute because of the fact that unions were unincorporated associations so that each member had to be served personally. Sec. 301 was designed to promote industrial peace by promoting a high degree of responsibility in the parties.

*Textile Workers v. Lincoln Mills*[4] construed sec. 301 of the Labor Management Relations Act (LMRA) as doing more than just granting jurisdiction to the federal courts in breach of collective-bargaining-contract suits. The case held that sec. 301 created a federal right so that federal substantive law must be used in suits brought

[1] 29 USCA, Labor, sec. 141 *et seq.*
[2] 29 USCA, Labor, sec. 185.
[3] S. Report 105, 80th Congress, 1st Sess., p. 17.
[4] (1957), 353 U. S. 448, 77 Sup. Ct. 912, 1 L. Ed. (2d) 972.

under sec. 301. *Lucas Flour*,[5] building on the *Lincoln Mills* doctrine, held that sec. 301 preempted state law in breach of collective-bargaining-contract suits where the employer was engaged in interstate commerce.

". . . we cannot but conclude that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." [6]

State court jurisdiction over sec. 301 controversies was the issue in *Dowd Box Co. v. Courtney*.[7] In this case a breach of a collective-bargaining-contract suit was brought in state court. Challenge to the state court's jurisdiction was made. The United States supreme court held that jurisdiction of sec. 301 actions was held concurrently by state and federal courts.

"The legislative history of the enactment nowhere suggests that, contrary to the clear import of the statutory language, Congress intended in enacting § 301 (a) to deprive a party to a collective bargaining contract of the right to seek redress for its violation in an appropriate state tribunal."

In the case at bar, a breach of a collective-bargaining contract was alleged and a sec. 301 suit was brought before the WERB. American Motors, appellant, argues that the concurrent-jurisdiction principle established by *Dowd* applies only to state courts and does not permit state administrative bodies to assert jurisdiction. We have considered this question before. In *Tecumseh Products Co. v. Wisconsin Employment Relations Board* [8] a breach of contract suit was brought by a union against the employer pursuant to sec. 301. The employer argued that the WERB was an administrative agency and not empowered to apply federal law in accordance with sec. 301.

[5] *Teamsters Local v. Lucas Flour Co.* (1962), 369 U. S. 95, 82 Sup. Ct. 571, 7 L. Ed. (2d) 593.

[6] Id. at page 104.

[7] (1962), 368 U. S. 502, 507, 82 Sup. Ct. 519, 7 L. Ed. (2d) 483.

[8] (1964), 23 Wis. (2d) 118, 126 N. W. (2d) 520.

This court held that states had concurrent jurisdiction over sec. 301 controversies and were free to allocate judicial power within their own boundaries. Hence the WERB could assume jurisdiction over these disputes.

The significant facts of the case at bar are identical with those of the *Tecumseh Case,* and it would be necessary to overrule *Tecumseh* to act favorably on appellant's contention that the WERB had no jurisdiction to hear the matter since it was an administrative agency and not a state court. Appellant recognizes this and urges that a vital factor was not considered by the court in deciding *Tecumseh,* which factor, had the court known about it, would have brought about a different holding. It argues that Congress considered delegating the authority to deal with sec. 301 suits to the National Labor Relations Board via the unfair labor practice procedure. However, this method of handling such suits was explicitly rejected.

"The Senate amendment contained a provision which does not appear in section 8 of existing law. This provision would have made it an unfair labor practice to violate the terms of a collective bargaining agreement or an agreement to submit a labor dispute to arbitration. The conference agreement omits this provision of the Senate amendment. Once parties have made a collective bargaining contract the enforcement of that contract should be left *to the usual processes of the law and not to the National Labor Relations Board."* [9] (Emphasis added.)

Appellant argues that this rejection of the NLRB as a method of resolving collective-bargaining-contract disputes under sec. 301 is tantamount to a federal policy rejecting the administrative approach in sec. 301 disputes. Thus the state should be foreclosed from dealing with sec. 301 suits via an administrative proceeding.

---

[9] House Conference Report No. 510, 80th Congress, 1st Sess., p. 41, 1 Legislative History of the Labor Management Relations Act, 1947, 545.

Sec. 111.06 (1) (f), Stats., makes it an unfair labor practice for an employer to violate a collective-bargaining agreement while sec. (2) (c) imposes a correlative obligation on the union. Sec. 111.07 (1), permits such unfair labor practices to be brought before the WERB. This method of enforcing collective-bargaining contracts was adopted in 1939, well before the enactment of sec. 301, to provide a remedy for breach of contract in the industrial relations area.[10] When Congress decided to leave enforcement to the "usual processes of the law" this did not necessarily foreclose state administrative action in this area because the usual processes of law included an administrative procedure for enforcing collective-bargaining contracts. Colorado,[11] Hawaii,[12] Minnesota,[13] and the Commonwealth of Puerto Rico,[14] also dealt with breaches of collective-bargaining contracts via administrative unfair labor practice proceedings prior to 1947. These methods of dealing with collective-bargaining-contract breaches, including Wisconsin's, were known in the Senate and are therefore included in the term "usual processes of the law." [15]

This method of dealing with sec. 301 breaches is somewhat unique, so there are not many cases resolving the jurisdictional question faced by the Wisconsin supreme court in *Tecumseh,* and in this case. *El Mundo, Inc., v. Puerto Rico Labor Relations Board* [16] is squarely on point, however. In this case breach of collective-bargaining contract was alleged and pursuant to Puerto Rico law, an unfair labor practice hearing was held before the

---

[10] Ch. 57, Laws of 1939.

[11] Ch. 131, Colorado Laws, 1943, sec. 6.

[12] Revised Laws of Hawaii, 1955, Title 11, Labor, secs. 90–1 to 90–19, approved May 21, 1945.

[13] Ch. 469, Minnesota Laws, 1941.

[14] 29 L. P. R. A. 61 *et seq.*, approved May 8, 1945.

[15] S. Report 105, 80th Congress, 1st Sess., p. 18.

[16] CCH Labor Law Reporter, State Laws, vol. 3, page 65,242, par. 51,472.

Puerto Rico Labor Relations Board. On appeal, the employer challenged the jurisdiction of the board on the ground that the concurrent-jurisdiction principle of *Dowd* did not extend to administrative agencies in sec. 301 actions. The supreme court of Puerto Rico upheld the jurisdiction of the board. The case was appealed to the United States supreme court and the central issue argued was the jurisdiction of the board to handle collective-bargaining-contract breaches through an unfair labor practice proceeding.[17] The supreme court denied certiorari.[18]

Certiorari may be denied for a number of reasons other than the merits of the case. Denial of certiorari is a way in which the United States supreme court controls its work load and only cases of great importance are handled. The fact remains that certiorari was denied.

A basic contention made by appellant is that handling sec. 301 cases through unfair labor practice proceedings is a denial of substantive due process because of the variance in available remedies and the difference in timing. *Tecumseh* touched on this argument by citing *Dreyer v. Illinois,*[19] to the effect that a state could invest a non-judicial department of government with judicial powers without violating the due-process standard.

This court has also held that the denial of due-process argument is not valid because of a denial of jury trial. *General Drivers & Helpers Union v. Wisconsin Employment Relations Board*[20] refuted this argument on the ground that right to jury trial is not necessary in unfair labor practice cases because unfair labor practice litiga-

[17] *El Mundo, Inc., v. Puerto Rico Labor Relations Board* (1966), 384 U. S. 939, 86 Sup. Ct. 1456, 16 L. Ed. (2d) 538, appellant's brief therein, page 3.

[18] *El Mundo, Inc., v. Puerto Rico Labor Relations Board, supra,* footnote 17.

[19] (1902), 187 U. S. 71, 23 Sup. Ct. 28, 47 L. Ed. 79, cited in *Tecumseh Products Co. v. Wisconsin Employment Relations Board, supra,* footnote 8, at page 128.

[20] (1963), 21 Wis. (2d) 242, 124 N. W. (2d) 123.

tion was not in existence at the time of the adoption of the Wisconsin constitution. Substantive due process is not denied by using Wisconsin administrative procedure to determine the relief to be granted in a federal cause of action. *Tully v. Fred Olson Motor Service Co.*[21] held that Wisconsin could impose its own statute of limitations on sec. 301 actions in the absence of a federal statute of limitations. In this case, applying the state statute preserved the rights granted under sec. 301. In a similar fashion, no mandatory federal adjudicative body is provided by sec. 301. Use of the Wisconsin unfair labor practice proceeding only preserves the federal right established by sec. 301.

On the question of the denial of due process by the WERB in *Tool & Die Makers v. General Electric Co. X-Ray Dept.*[22] a union had filed an unfair labor proceeding under sec. 301 with the WERB. The employer removed the controversy to federal district court. In denying a union motion to remand to the WERB the federal court held:

"The sovereign State of Wisconsin has the undoubted power to provide the procedure by which, and the forum before which, actions for breach of collective bargaining agreements will be resolved. State laws, however, which depart from traditional and customary usages and procedures, such as here, where the state has apparently divided the judicial function between a Board which hears the evidence and declares the facts and the law, and a State court which enforces its rulings, cannot operate to defeat the right of a litigant otherwise entitled to have his cause heard in Federal court." [23]

Thus, denial of due process, if it exists, could be avoided by merely removing the cause to federal court. This removal is as of right.[24]

[21] (1965), 27 Wis. (2d) 476, 134 N. W. (2d) 393.
[22] (D. C. Wis. 1959), 170 Fed. Supp. 945.
[23] Id. at page 950.
[24] 28 USCA, Judiciary and Judicial Procedure, sec. 1441 (b). See also 28 USCA, Judiciary and Judicial Procedure, sec. 1337.

In substance, appellant's main argument would require us to take the following three steps:

1. The Congress of the United States did not desire to grant control of sec. 301 actions to the NLRB through unfair labor practice proceedings.

2. The NLRB is an administrative agency.

3. Therefore, federal policy prohibits the states from delegating jurisdiction of sec. 301 actions to an administrative agency in unfair labor practice proceedings.

We have already pointed out that the big problem with this reasoning is that Congress may have had no desire to dictate to the states the procedure to be used in handling sec. 301 actions. Moreover, unfair labor practices before the NLRB and before the WERB are not necessarily the same. The United States supreme court has said:

> "The term 'unfair labor practice' is not a term of art having an independent significance which transcends its statutory definition. The States are free (apart from pre-emption by Congress) to characterize any wrong of any kind by an employer to an employee, whether statutorily created or known to the common law, as an 'unfair labor practice.' " [25]

Thus, because the Congress chose not to allow the NLRB to have jurisdiction over sec. 301 actions via the unfair labor practice procedure, it does not preclude states from using unfair labor practice proceedings in sec. 301 actions because the two are not the same entity. Appellant is assuming a statutory policy much broader than that intended by Congress.

A further good reason exists for permitting jurisdiction of sec. 301 suits in the WERB. In *Dowd*, a strong argument was made that state courts should not have concurrent jurisdiction because of the effect on federal law which a dual interpretation might evoke. The court rejected this argument reluctantly in reaching its decision,

---

[25] *Algoma Plywood Co. v. Wisconsin Employment Relations Board* (1949), 336 U. S. 301, 305, 69 Sup. Ct. 584, 93 L. Ed. 691.

noting that there was a need for uniformity in this area. Arguably, the WERB would be better able to apply and develop the federal law pursuant to sec. 301 cases. The WERB is composed of three commissioners who are experts in the area of labor relations. They are well acquainted with federal labor law and its development. Hence they would be much better able to apply it uniformly than state courts.[26]

We conclude, therefore, that on this jurisdictional question this case is governed directly by *Tecumseh*,[27] and arguments of counsel have not convinced us that the holding in that case should be changed.[28]

### Recourse to WERB After Grievance Procedure is Exhausted.

Appellant makes a second argument against the jurisdiction of the WERB. It asserts that the collective-bargaining agreement provided grievance machinery to resolve disputes. This grievance machinery was the only method selected by the parties to resolve disputes and there was no provision for arbitration. Thus, by permitting the union to bring suit after the grievance procedure had been exhausted, the WERB forced the

---

[26] Holdings of WERB sustaining its jurisdiction to deal with sec. 301 cases: *Automobile Workers Local 578 v. Oshkosh Motor Truck Co.*, WERB Decision No. 2068-A, May 20, 1949, CCH Labor Law Reporter, State Laws, vol. 2, par. 47001.685; *WERB v. Bookbinders & Bindery Women, Local 49* (Wis. 1951), Circuit Court Milwaukee county, 20 Labor Cases, sec. 66, 484, CCH Labor Law Reporter, State Laws, vol. 2, par. 47001.685; *Bennet v. Halquist Lannon Stone Co.*, WERB Decision No. 4732, April 7, 1958, CCH Labor Law Reporter, State Laws, vol. 2, par. 41015.35.

[27] *Supra*, footnote 8.

[28] Recent cases in this court where the WERB exercised jurisdiction as per *Tecumseh* are: *Wisconsin Employment Relations Board v. Mews* (1965), 29 Wis. (2d) 44, 138 N. W. (2d) 147; *Drivers, Warehouse & Dairy Employees Union v. Wisconsin Employment Relations Board* (1965), 29 Wis. (2d) 272, 138 N. W. (2d) 180.

employer to arbitrate a dispute which he had never agreed to arbitrate. The union's weapon, argues appellant, was a strike. Thus, the second issue raised on this appeal may be stated as follows:

After the grievance procedure provided for in a collective-bargaining contract is exhausted and the contract contains no provision for arbitration, may a union on behalf of some of its members take the matter in controversy to the WERB?

Appellant cites *Haynes v. United States Pipe and Foundry Co.*[29] for the proposition that when a collective-bargaining agreement does not provide for final and binding arbitration, the processes of the courts are not available to the disputants. The case involved an individual employee who brought suit for wrongful discharge. The collective-bargaining contract involved was similar to the contract in our case in that a grievance procedure was provided with no arbitration clause. The court held that the employee could not bring suit under sec. 301 because federal labor policy required parties to collective-bargaining agreements to use exclusively the remedy provided in the agreement.

"The fact of the matter here is that the union processed appellant's grievance up to the point of striking. The denial of his claim then became final. We believe the law to be that his claim was thereby barred. The court has jurisdiction. . . . The action under the grievance procedure, here a final decision under the terms of the agreement, may be asserted in bar as an affirmative defense. That is this case, and thus it must be affirmed. . . ."[30]

The case at bar is distinguishable from *Haynes* in at least one important respect. In *Haynes*, litigation was brought by an individual whereas in the instant case the complaint is filed by the union to enforce the rights of its members under the collective-bargaining contract. Mat-

[29] CCH Labor Law Reporter, Labor Relations, vol. 4, page 16,981, par. 11,295.

[30] Id. at page 16,985.

ters of individual concern only may be foreclosed by union action in the grievance proceeding. The power of the union to bring suit under the contract is discussed in Cox, Rights Under a Labor Agreement: [31]

"The group interests represented by the collective bargaining representative ought to be sufficient to give it standing to maintain an action for violation of the terms and conditions of employment established by a collective agreement even though it lacks power to bind an individual employee by a negotiated settlement. The frequency of strikes resulting from disciplinary action against a few employees, or from failure to pay the union rate, or from a violation of seniority testifies to the concern which all the employees feel in maintaining the integrity of their contract by enforcing compliance. Social policy makes it desirable to build up the habit of securing compliance through such peaceful remedies as grievance procedures, arbitration, and litigation if necessary. Turning the group interest into these channels does not lessen its force, while denying the group power to maintain the integrity of the contract by peaceful means might encourage renewed resort to economic weapons. When a question of contract interpretation is raised, the union also speaks both for those who will be affected by the rule made for the future, as in Johnson's case, and for the employees presently affected through averaging or the force of comparison, as in the *Royal Typewriter* and job classification illustrations. Sometimes, as pointed out above, the union is the only party qualified to sue, either because its participation is necessary to implement the promise or because the violation has not resulted in injury to identifiable individuals."

This indicates a strong policy favoring permitting the union to sue to enforce the contract even when there is no arbitration clause.

The union has the right to sue to enforce contract provisions inuring to the benefit of individuals. In *Commercial Telegraphers' Union, AFL v. Western Union Telegraph Co*.[32] the court allowed a union to maintain its

[31] 69 Harvard Law Review (1956), 601, 639.
[32] (D. C., D. C. 1943), 53 Fed. Supp 90.

action for damages and an injunction against further violation of seniority rights. In *AFL v. Western Union Telegraph Co.*[33] the court held that under sec. 301 the collective-bargaining representative was a proper party to complain of the company's failure to pay an individual's pension in alleged violation of the collective-bargaining agreement. These cases indicate that any breach of contract by the employer affecting the union or its workers may be prosecuted by the union. Sec. 301 should not be limited to contractual breaches where an arbitration clause is involved.

The case of *Allied Oil Workers Union v. Ethyl Corp.*,[34] cited by the WERB in assuming jurisdiction of the subject matter here, so holds. In that case the right of an employer under a collective-bargaining agreement to draft employees for overtime work over their protest was involved and the court held that notwithstanding that the agreement contained no compulsory arbitration provision the union was free to commence litigation for the declaration of rights on this matter.

A more basic reason exists for permitting the union to enforce the seniority provision of the contract via a sec. 301 action. Seniority provisions are essential to the union's status as the bargaining representative of the employees. Seniority provisions protect union members from being laid off or discharged before nonunion men and ensure to union men that they will be promoted to better paying jobs. The employer should not be permitted to flout such a basic provision of the union's contract. Nor is striking to ensure compliance with the seniority provision a reasonable alternative. Sec. 111.01 (2), Stats., states the underlying policy of the Employment Relations Act:

[33] (6th Cir. 1950), 179 Fed. (2d) 535.
[34] (5th Cir. 1965), 341 Fed. (2d) 47.

"Industrial peace, regular and adequate income for the employe, and uninterrupted production of goods and services are promotive of all of these interests. They are largely dependent upon the maintenance of fair, friendly and mutually satisfactory employment relations and the availability of suitable machinery for the peaceful adjustment of whatever controversies may arise. . . ."

Permitting the WERB to determine this contractual dispute would best effectuate this policy.

*By the Court.*—Judgment affirmed.