498 P.2d 687

**STATE of New Mexico, Plaintiff-Appellant,**

v.

**Luis JARAMILLO et al., Defendants-Appellees.**

**No. 858.**

Court of Appeals of New Mexico.

June 2, 1972.

David L. Norvell, Atty. Gen., Thomas Patrick Whelan, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

L. Michael Messina, Albuquerque, for defendants-appellees.

## OPINION

WOOD, Chief Judge.

Defendants were charged by informations with violating § 40A–14–5, N.M.S.A. 1953 (Repl.Vol. 6, Supp.1971). The trial court held the statute was unconstitutional and quashed the informations. The State appeals. It is unnecessary to consider each of the constitutional issues urged since we hold that the portion of § 40A–14–5, supra, involved is without sufficiently definite standards to be enforceable and, thus, an unlawful delegation of legisla-

tive power which violates N.M.Const. Art. III, § 1. City of Santa Fe v. Gamble-Skogmo, Inc., 73 N.M. 410, 389 P.2d 13 (1964); see Continental Oil Co. v. Oil Conservation Com'n, 70 N.M. 310, 373 P.2d 809 (1962).

The applicable portion of § 40A–14–5, supra, reads:

"A. Wrongful use of public property consists of:

" . . . .

"(2) remaining in or occupying any public property after having been requested to leave by the lawful custodian, or his representative, who has determined that the public property is being used or occupied contrary to its intended or customary use. . . ."

According to the State's bill of particulars:

"The waiting room where defendants were lounging on the floor by sitting on the floor and lying on the floor was a sitting area intended for the appropriate and proper use of those persons whith [sic] appointments who were waiting to' see the Governor, this was the intended use and customary use. Defendants were not in this category, nor was sitting on the floor and lying on the floor an intended use or customary use of the waiting room. This waiting room customarily closed at about 5:00 P.M. Defendants declined departure at this hour. The building closed at about 6:00 P.M., the Defendants declined departure at this hour."

There is no question but that a State may regulate the use and occupancy of public buildings. See Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966); Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L. Ed.2d 697 (1963); Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352 (1940). Such regulation must, however, be precise and nar-

**802**

rowly drawn " . . . evincing a legislative judgment that certain specific conduct be limited or proscribed. . . . " Edwards v. South Carolina, supra. As examples only, see the South Carolina statute quoted in footnote 11 of Edwards v. South Carolina, supra; compare § 40A–14–5(A) (1), supra.

The statute in question, quoted above, does not declare that "remaining in or occupying" public property "contrary to its intended or customary use" is prohibited. The statute prohibits this conduct *only* after the custodian determines the use or occupancy is "contrary to its intended or customary use."

What is to serve as the basis for this determination? The custodian's own opinion, the prevailing community sentiment, an unknown administrative regulation? The statute does not provide a standard to guide the custodian in making his determination. The attempted delegation to the custodian of the authority to cause the "remaining in or occupancy" of a public property to become a crime fails because no standards have been provided. State ex rel. Holmes v. State Board of Finance, 69 N.M. 430, 367 P.2d 925 (1961).

There is a suggestion that the absence of standards does not bar the application of the statute because the custodian would act reasonably. This suggestion is answered by State ex rel. Holmes v. State Board of Finance, supra, which states:

" . . . the fact that respondent acted only under certain self-imposed restraints can in no way serve to supply what has been omitted. It is not what has been done but what can be done under a statute that determines its constitutionality. . . . "

The State asserts it is the duty of this court to sustain the statute and that if a narrow interpretation of the statute within constitutional limits is possible, we are obligated to adopt such an interpretation as the meaning of the statute. See State v. McKinley, 53 N.M. 106, 202 P.2d 964 (1949). In connection with this suggested approach, the State urges us to reject words and substitute others. See State v. Nance, 77 N.M. 39, 419 P.2d 242 (1966), cert. denied,. 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967).

The State's contention is not directed to the absence of standards but at the meaning of "intended or customary use." This argument is directed to the question of whether "intended or customary use" is so vague as to violate due process. We have not answered this contention.

We hold only that § 40A–14–5(A) (2), supra, cannot be applied because there are no standards by which the custodian could determine a use or occupancy contrary to intended or customary use. In so holding, we recognize our duty to uphold the statute if possible. It is not possible in this case because of the total absence of standards.

The orders quashing the informations are affirmed.

It is so ordered.

SUTIN, and HERNANDEZ, JJ., concur.