532 P.2d 889

STATE of New Mexico, Plaintiff-Appellee,

v.

Victor CUTNOSE, Woody Foster and Michael P. Upshaw, Defendants-Appellants.

No. 1587.

Court of Appeals of New Mexico.

Feb. 12, 1975.

Michael G. Rosenberg, John L. Walker, Albuquerque, for defendants-appellants.

Toney Anaya, Atty. Gen., Jay F. Rosenthal, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge

Cutnose, Foster and Upshaw were convicted of criminal trespass. Section 40A–14–1, N.M.S.A.1953 (2d Repl. Vol. 6). Cutnose was also convicted of assault. Section 40A–3–1, N.M.S.A.1953 (2d Repl. Vol. 6). The events on which the convictions were based occurred at the Public Health Service Hospital in McKinley County, New Mexico. Seven issues are raised in the appeal; three are dispositive. They are: (1) jurisdiction, (2) applicability of the criminal trespass statute, and (3) excusing a prospective juror.

*Jurisdiction*

Defendants contend New Mexico courts had no jurisdiction over their persons or over the offenses charged. There are three claims.

■ Two of the three claims are identical to those raised in State v. Cutnose, 87 N.M. 307, 532 P.2d 896 (Ct.App.1974). These two claims are made on the basis of 18 U.S.C.A. §§ 1151 and 1153 (Supp.1974) and on the basis of the Navajo Tribal Code. The answer is the same as in *John Paul Cutnose*. Defendants introduced no evidence in support of their pretrial motions. The evidence at trial did not establish an absence of trial court jurisdiction. Specifically, there is no factual basis for these two claims.

■ The third claim is that the hospital where the alleged offenses occurred was a "needful building" under 18 U.S.C.A. § 7(3) (1969) and thus under the exclusive jurisdiction of the United States.

18 U.S.C.A. § 7(3), supra, states:

"The term 'special maritime and territorial jurisdiction of the United States' * * * includes:

"(3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, *or* any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building." (Our emphasis.)

There is nothing in this record showing the hospital was on land reserved or acquired for the use of the United States and under its jurisdiction. Assuming the hospital was a needful building, there is nothing showing it was acquired by the United States with the consent of the New Mexico Legislature. See, Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455, (1939); Battle v. United States, 209 U.S. 36, 28 S. Ct. 422, 52 L.Ed. 670 (1908); compare the provisions appearing at Chapter 7, Article 2, N.M.S.A.1953 (Repl. Vol. 2, pt. 2).

Defendants have failed to demonstrate a lack of jurisdiction in the district court. State v. Cutnose, supra.

*Applicability of the Criminal Trespass Statute*

■ Defendants were convicted of violating § 40A–14–1, supra. They contend

that section does not apply to offenses against public property. Section 40A–14–1, supra, provides:

"Criminal trespass consists of unlawfully, and with malicious intent, entering or remaining upon the lands of another knowing that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof."

On its face, § 40A–14–1, supra, seems applicable to the factual situation in this case—remaining on public property knowing that consent has been withdrawn. Section 40A–14–1, supra, seems applicable because it does not distinguish between public and private property. A consideration of the legislative history, however, shows the Legislature did not intend § 40A–14–1, supra, to apply to public property. Rather, the Legislature has enacted specific statutes concerning trespass upon public property.

Over the years, the Legislature enacted a plethora of statutes pertaining to trespass. They begin with a prohibition against footpaths in 1851, and cover a variety of subject matters. These early statutes, similar to § 40A–14–1, supra, made no distinction between public and private property. These statutes may be found in Chapter 40, Article 47, N.M.S.A.1953 (Orig. Vol. 6). Among these early statutes, there are two specific enactments concerning public property. Laws 1901, ch. 4, § 1 dealt with wrongful entry of public structures, Laws 1931, ch. 153, § 2 prohibited the injury of engineering works of the state, counties and municipalities. See §§ 40–47–24 and 40–47–10, supra. Laws 1959, ch. 82 repealed § 40–47–24, supra, and enacted a new provision pertaining to wrongful entry of public facilities.

The Report of Criminal Law Study Interim Committee, 1961–62 recommended that the various trespass statutes be reduced to two—a criminal trespass statute and a statute concerning wrongful entry of a public facility. This recommendation was followed. The Criminal Code enacted in 1963 (see § 40A–1–1 et seq., N.M.S.A. 1953 (2d Repl. Vol. 6)) contained two trespass statutes. One was a general statute on criminal trespass; the latter dealt with wrongful entry of a public facility. Sections 40A–14–1 and 40A–14–2, N.M.S.A. 1953 (1st Repl. Vol. 6). The legislative history of trespass statutes shows a consistent pattern of general trespass statutes and special trespass statutes for public property.

This pattern has continued. The two statutes recommended by the Criminal Law Study Interim Committee, supra, dealt only with entry. In enacting the two statutes, the Legislature added "remaining upon" provisions to the criminal trespass statute, which is § 40A–14–1, supra. No parallel provision was added to the public facility statute which dealt only with the wrongful entry of a public facility. See § 40A–14–2, supra. From enactment of the Criminal Code in 1963, until 1969, there was no specific statute prohibiting remaining upon public property without consent. Laws 1969, ch. 61 repealed § 40A–14–2, supra, and enacted the statute compiled as § 40A–14–5, N.M.S.A.1953 (2d Repl. Vol. 6). This statute dealt with both entry and remaining upon public property. Thus in 1969 there was a general criminal trespass statute and a specific statute dealing with trespass upon public property.

The "remaining upon" portion of § 40A–14–5, supra, was held to be unconstitutional in State v. Jaramillo, 83 N.M. 800, 498 P.2d 687 (Ct.App.1972). Since *Jaramillo*, the Legislature has not enacted a trespass statute dealing with remaining upon public property. The State contends this inaction shows a legislative intent that the provisions of the general criminal trespass should apply. We disagree.

■ In determining whether the general provisions of § 40A–14–1, supra, apply to public property, we must interpret § 40A–14–1, supra, "as the Legislature understood it at the time it was enacted." Montoya v. City of Albuquerque, 82 N.M. 90, 476 P.

2d 60 (1970). "In determining legislative intent we consider prior statutes in pari materia." State v. Vickery, 85 N.M. 389, 512 P.2d 962 (Ct.App.1973). The prior statutes, reviewed above, show that at the time § 40A–14–1, supra, was enacted, the Legislature did not intend the general criminal trespass statute to apply to public property. That intent is shown, historically, by the specific trespass statutes concerning public property.

■ Our interpretation of § 40A–14–1, supra, is supported by applying another rule of construction to § 40A–14–5, supra. That rule is that in enacting § 40A–14–5, supra, the Legislature was informed as to existing law. State v. Trujillo, 85 N.M. 208, 510 P.2d 1079 (Ct.App.1973). If § 40A–14–1, supra, applied to remaining upon public property, the enactment of § 40A–14–5, supra, would have been a useless act. The result is that § 40A–14–5, supra, was enacted because § 40A–14–1, supra, did not apply to remaining on public property.

■ We hold that § 40A–14–1, supra, does not apply to the act of remaining on public property without consent. Anticipating this result, a question was raised at oral argument as to whether there is any statute dealing with public property. Since *Jaramillo*, supra, held § 40A–14–5, supra, unconstitutional, was § 40A–14–2, supra, revived under the analysis in State v. Prince, 52 N.M. 15, 189 P.2d 993 (1948)? No question of revival is presented in this appeal because § 40A–14–2, supra, dealt only with entry on public property. It did not deal with remaining on public property. Section 40A–14–5, supra, being unconstitutional, there is no statute dealing with remaining on public property without consent.

■ Section 40A–14–1, supra, not being applicable to the acts for which defendants were convicted, the conviction for criminal trespass cannot stand. In so holding we note that Cutnose did not appeal his conviction for criminal trespass. His conviction for the offense cannot stand because there is no criminal statute covering his trespass and, thus, he did not violate any statute by that trespass. Compare State v. Ticknor, 81 N.M. 118, 464 P.2d 408 (Ct. App.1970).

With this result, other issues involving the criminal trespass conviction need not be answered.

### Excusing a Prospective Juror

Defendants assert the trial court wrongfully excused prospective juror Blackgoat because the record does not show that he was biased in any way. Defendants misread the record. During voir dire, Blackgoat was asked if he would be prejudiced by the fact that defendants were members of the American Indian Movement. He replied:

"Yes, I think so. We read about them, yes. I have read about them, and about the opinions you asked about, I think that I do agree with what they do, when all this levels off. * * *"

■ Defendants were entitled to an impartial jury. State v. McFall, 67 N.M. 260, 354 P.2d 547 (1960). They were not entitled to a juror prejudiced in their favor.

■ It is within the trial court's discretion as to whether a prospective juror should be excused. The trial court's decision will not be disturbed unless there is a manifest error or a clear abuse of discretion. State v. Valdez, 83 N.M. 632, 495 P.2d 1079 (Ct.App.1972), aff'd, 83 N.M. 720, 497 P.2d 231 (1972), cert. denied, 409 U.S. 1077, 93 S.Ct. 694, 34 L.Ed.2d 666 (1972). There was no error and no abuse of discretion.

The convictions of Cutnose, Foster and Upshaw for criminal trespass in violation of § 40A–14–1, supra, are reversed. The conviction of Cutnose for assault in violation of § 40A–3–1, supra, is affirmed. The cause is remanded for further proceedings consistent with this opinion.

It is so ordered.

SUTIN, J., concurring in part and dissenting in part.

LOPEZ, J., specially concurring.

SUTIN, Judge (concurring in part and dissenting in part).

I concur in the result of the majority opinion on applicability of the criminal trespass statute, and excusing a prospective juror. I dissent on affirmance of the conviction of Cutnose for assault in violation of § 40A–3–1, N.M.S.A.1953 (2d Repl. Vol. 6).

The State of New Mexico did not have criminal jurisdiction in "Indian Country" within New Mexico to try Cutnose for aggravated assault. State v. Cutnose, 87 N. M. 307, 532 P.2d 896 (Ct.App.1974) (J. Sutin, dissenting). On December 20, 1974, the Supreme Court denied the petition for writ of certiorari in that case.

A. *What is meant by denial of certiorari?*

The denial of a petition for writ of certiorari by the court of last resort to review a decision of a court of intermediate appeal is not regarded as an affirmance of such decision which raises it to the dignity of final authority. The denial cannot be utilized as precedent or authority for or against the propositions urged or defended in such proceedings. It cannot be urged as approval of the rule announced in the court of intermediate appeal. Southern Bell Telephone & Telegraph Co. v. Bell, 116 So.2d 617 (Fla.1959); Campbell v. Schlaifer, 88 N.J.Super. 66, 210 A.2d 781 (1965); Fuller v. State of Alabama, 269 Ala. 657, 115 So.2d 118 (1959), cert. denied, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358; Louisville and Nashville Railroad Company v. Bayles, 275 Ala. 206, 153 So.2d 639 (1963); 21 C.J.S. Courts § 198, pp. 349, 350.

Mr. Justice Frankfurter in Brown v. Allen, 344 U.S. 443, 491–92, 73 S.Ct. 397, 439, 97 L.Ed. 469, said:

"The denial of a writ of certiorari imports no expression of opinion on the merits of the case, as the bar has been told many times." United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 182, 67 L.Ed. 361, 364. We have repeatedly indicated that a denial of certiorari means only that, for one reason or another which is seldom disclosed, and not infrequently for conflicting reasons which may have nothing to do with the merits and certainly may have nothing to do with any view of the merits taken by a majority of the Court, there were not four members of the Court who thought the case should be heard. Any departure from this fundamental rule in the type of case we are considering ought to be based on a showing that these denials of certiorari, unlike all the other denials, are in fact the essential equivalents of adjudication on the merits.

In Spencer v. Flint Memorial Park Association, 4 Mich.App. 157, 144 N.W.2d 622, 627 (1966), Chief Judge Lesinski succinctly said:

It is too basic to require a citation of authority that the denial of a writ of certiorari in the United States Supreme Court is not authority for anything except that the Court has exercised its discretion to refuse to hear and decide the case on the merits.

In American Motors Corp. v. Wisconsin Employ. Rel. Bd., 32 Wis.2d 237, 145 N. W.2d 137, 141, 30 A.L.R.3d 419 (1966), the court said:

Certiorari may be denied for a number of reasons other than the merits of the case. Denial of certiorari is a way in which the United States Supreme Court controls its work load and only cases of great importance are handled.

The denial of certiorari in State v. Cutnose "imports no expression of opinion on the merits of the case".

B. *Cases of first impression are matters of importance to be determined with finality.*

In the dissent of State v. Cutnose, I stated:

The State's jurisdiction involves one issue of Indian-State relations never be-

fore decided—the meaning of a "dependent Indian community".

Until finality of this issue is determined, Indian-State relationships will remain uncertain. "The problem of jurisdiction—the flow of power over Indian affairs from government to government—presents an unusual rich field for testing where and when it has been deemed critical for the dominant society to assert its laws and impose its judicial system over a fragmented minority." Price, Law and The American Indian (Bobbs-Merrill, 1973, vii).

The Congress of the United States declared that "the term 'Indian country' * * * means * * * all dependent Indian communities * * * whether within or without the limits of a state * * *." 18 U.S.C.A. § 1151 (1966). Congress intended to broaden the scope of the meaning of "Indian Country". The state and its Indian tribes should seek entry into the Supreme Court of the United States in search of finality of the meaning of "dependent Indian communities". It will be a guiding light for all states and Indian tribes in this country.

The failure to decide cases of first impression in Indian-State relationships, as well as other fields of law, leads to misunderstandings in district courts, intermediate courts of appeal, persons involved and their attorneys. It leads to conflicting decisions, diatribes, and unending confusion in the search for justice.

LOPEZ, Judge (specially concurring).

I agree with the proposed opinion of Chief Judge Wood as to points II and III. I also agree as to the result, but not all the language, in point I.

I agree that the defendants failed to demonstrate a lack of jurisdiction in the sense that they failed to meet their burden. I join, however, with Judge Sutin's comments relative to the meaning of certiorari and the importance of determining with some finality those cases of first impression in New Mexico.