674 P.2d 1117

STATE of New Mexico, Petitioner,

v.

Kenneth McCORMACK, Respondent.

No. 14859.

Supreme Court of New Mexico.

Jan. 9, 1984.

Paul Bardacke, Atty. Gen., Marcia E. White, Asst. Atty. Gen., Santa Fe, for petitioner.

Dan A. McKinnon, III, Paul A. Phillips, Raymond Schowers, Albuquerque, for respondent.

## OPINION

STOWERS, Justice.

The State of New Mexico petitioned this Court on a writ of certiorari to review the judgment of the Court of Appeals in *State v. McCormack* (Ct.App. No. 5732, filed March 8, 1983). The Court of Appeals reversed the trial court's conviction of the respondent for criminal trespass. The Court of Appeals determined that the respondent was convicted under an inapplicable statute.

The issue we decide on certiorari is whether the general trespass statute, NMSA 1978, Section 30–14–1(A) (Cum. Supp.1983), applies in this case where the trespass consisted of entry onto land owned by the federal government. We hold that it does, and reverse the Court of Appeals.

The respondent is a free lance journalist. On September 7, 1981, citizens planned a demonstration at the Waste Isolation Pilot Plant site (WIPP site) located near Carlsbad. The Eddy County sheriff's department and officials of the Department of Energy decided to deal with the demonstration by setting up a buffer zone around the work area of the WIPP site. This was done to avoid the demonstrators' threatened disruption of the work on the project.

The demonstrators were allowed to demonstrate outside of this buffer zone. They were warned that if they entered the buffer zone they would be trespassing. Two dozen demonstrators entered the buffer zone. The demonstrators held hands, walked in rows of seven, and when they entered the buffer zone they were arrested. The respondent and other media personnel also entered the buffer zone. They were not holding hands with the demonstrators. The respondent was taking pictures when arrested and did not think the warning applied to media personnel.

The parties in this case filed a stipulation relating to the title and ownership of the WIPP site. In this stipulation the parties agreed that:

On 22 July 1854, the United States acquired title to and ownership of the lands in question by a Grant from the Territory of New Mexico. This status has remained the same since that date.

In an effort to verify the Grant cited in this stipulation, the laws of the Territorial Assembly were reviewed; however, this Grant was not located. The acts of Congress during this period reveal that on July 22, 1854, Congress passed a law establishing the office of the Surveyor-General for the Territory of New Mexico. This Act also provided donations of public lands for citizens of the territory to homestead. Act of July 22, 1854, ch. 103, 10 Stat. 308. The Grant mentioned in the stipulation is not referenced in this act of Congress.

Despite the seemingly uncertain nature of the title to this land, a review of the history of this area reflects the fact that the New Mexico territory, including the area of the WIPP site, became property of the United States in 1848 by virtue of the Treaty of Guadalupe Hidalgo. Treaty of February 2, 1848, United States-Mexico, 9 Stat. 922, NMSA 1978 (Vol. 1, Pamp. 3). Therefore, the public land in this area was

the property of the federal government prior to the 1854 date cited in the stipulation of the parties.

Subsection (A) of the trespass statute, Section 30–14–1(A) (emphasis added), states:

Criminal trespass consists of unlawfully entering or remaining upon the *lands of another* knowing that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof.

The State contends that Subsection (A) is applicable in this case. The State argues that because the federal government is the proprietor of the land and does not have exclusive jurisdiction, that the State of New Mexico has sovereignity and dominion over the subject land.

There are three principal methods by which the federal government acquires exclusive ownership and jurisdiction over state lands. *Arledge v. Mabry,* 52 N.M. 303, 197 P.2d 884 (1948); *See Paul v. United States,* 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); *Fort Leavenworth Railroad Co. v. Lowe,* 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264 (1885). First, land may be purchased pursuant to the purposes stated in Article I, Section 8, Clause 17 of the United States Constitution; second, by purchase without obtaining consent of the State; third, a state may cede the land to the government. Moreover, when a territory is admitted to the union, the federal government may reserve exclusive jurisdiction over certain state lands. *See,* Enabling Act for New Mexico, June 20, 1910, ch. 310, 36 Stat. 557, §§ 1 through 18, NMSA 1978 (Vol. 1, Pamp. 3).

In 1912, the State of New Mexico passed a law granting a blanket consent for the federal government to purchase state lands. 1912 N.M.Laws, ch. 47. However, the United States government did not purchase the land comprising the WIPP site. The title to this land had been previously acquired by the federal government through the Treaty of Guadalupe Hidalgo. Therefore, the first two methods of obtaining exclusive federal jurisdiction, by purchase with or without consent, are not applicable to the present case.

Nor is the third method of obtaining exclusive jurisdiction applicable in that the federal government did not acquire the land by cession. The only lands ceded by New Mexico are those found at NMSA 1978, Sections 19–2–6 through 19–2–11 (Orig. Pamp. and Cum.Supp.1983). Moreover, nothing in the Enabling Act for New Mexico reserves exclusive federal jurisdiction over the land in question. Enabling Act for New Mexico, § 2.

When New Mexico became a state, it acquired sovereignity and dominion over the lands of the United States within the State of New Mexico. *Macomber v. Bose,* 401 F.2d 545 (9th Cir.1968). As to such lands, the relationship of the United States is that of individual proprietor. *Macomber v. Bose; Paul v. United States; Fort Leavenworth Railroad Co. v. Lowe; Arledge v. Mabry.* Therefore, the State of New Mexico retains its dominion and legislative control over the area of the WIPP site, so long as the State does not interfere with the use enjoyed by the United States government, the proprietor of the land. The trial court took judicial notice of this relationship and determined there exists a situation of managerial ownership of this tract of land by the federal government.

The respondent, citing *State v. Cutnose,* 87 N.M. 300, 532 P.2d 889 (Ct.App.1975), argues that Section 30–14–1(A) does not apply to public property and is therefore dispositive of this issue. At the time *Cutnose* was decided, the trespass statute only included the language of what is now Subsection (A) of Section 30–14–1. NMSA 1953, § 40A–14–1 (2d Repl.Vol. 6). Until 1975, when Subsection (B) was added by the Legislature, trespass consisted of the trespassing on the lands "of another."

In *Cutnose,* the Court of Appeals reviewed the statutory history of the trespass statutes in New Mexico and held that Section 40A–14–1, currently Section 30–14–1(A), did not apply to public property. Victor Cutnose was convicted of trespassing on the U.S. Public Health Service Hospital in

Gallup. The court held that in light of the legislative history of *specific* statutes concerning trespass upon public property, the conviction of Cutnose, based on a *general* trespass statute, could not stand.

The *Cutnose* court stated that "[o]n its face, § 40A–14–1, supra, seems applicable to the factual situation in this case—remaining on public property knowing that consent has been withdrawn." *Id.* at 302, 532 P.2d at 891. The court then went on to decide that the Legislature did not intend Section 40A–14–1 to apply to public property because the Legislature had previously enacted specific statutes concerning trespass upon public property. In support of this reasoning, the *Cutnose* court also construed NMSA 1953, Section 40A–14–5 (2nd Repl.Vol. 6), currently NMSA 1978, Section 30–14–4, a statute dealing with the wrongful use of public property. In construing these statutes, the *Cutnose* court stated that:

> If § 40A–14–1, supra, applied to remaining upon public property, the enactment of § 40A–14–5, supra, would have been a useless act. The result is that § 40A–14–5, supra, was enacted because § 40A–14–1, supra, did not apply to remaining on public property.

*Id.* at 303, 532 P.2d at 892.

The "remaining upon" portion of Section 40A–14–5(A)(2), currently Section 30–14–4(A)(2), was later found to be without sufficiently definite standards to be enforceable and was therefore held to be unconstitutional in *State v. Jaramillo,* 83 N.M. 800, 498 P.2d 687 (Ct.App.1972). *Cutnose,* 87 N.M. at 302, 532 P.2d at 891.

However, in arriving at its conclusion that Section 40A–14–1 did not apply to public property, the court in *Cutnose* was in fact comparing a trespass statute, Section 40A–14–1 with Section 40A–14–5, a statute titled "Wrongful use of public property; permit; penalties." We find that the court's comparison of a trespass statute with a wrongful use of public property statute, in order to arrive at the holding that Section 40A–14–1 does not apply to a trespass on public property, is untenable.

Moreover, in an earlier Cutnose case, *State v. Cutnose,* 87 N.M. 307, 532 P.2d 896 (Ct.App.), *cert. denied,* 87 N.M. 299, 532 P.2d 888 (1974), the trespass conviction of the defendant, John Paul Cutnose, at the same facility was affirmed. The defendant argued that jurisdiction over the facility was in the federal government or the tribal courts, not the State. The Court of Appeals declined to hold that exclusive jurisdiction was with the United States, thereby rejecting the defendant's jurisdictional claims.

Subsequently, the Legislature enacted what is now NMSA 1978, Section 30–14–1(B) (Cum.Supp.1983), Laws 1975, ch. 52, Section 1. This section prohibits trespassing on lands "owned, operated, or controlled by the state or any of its political subdivisions."

We agree with the Court of Appeals that under a plain reading of the statute, Subsection (B), which relates to land owned, operated or controlled by the State or its political subdivisions, does not apply to the land in question. However, if, as here, the land is owned and operated by the federal government as a proprietor, the State of New Mexico has sovereignty over the land just as it has sovereignty over privately owned land within its borders, provided it does not interfere with the use enjoyed by the proprietor of the land, the federal government. *Fort Leavenworth Railroad Co. v. Lowe.* Where the United States does not have exclusive jurisdiction, the police power of the state would have effect on federally owned and operated land. *See Collins v. Yosemite Park & Curry Co.,* 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502 (1938).

 In the present case, the State has exercised its criminal jurisdiction over the acts of the respondent on the land comprising the WIPP site through Section 30–14–1(A), entering lands of another. We hold that the respondent was convicted under a statute applicable to his acts. The decision of the Court of Appeals is hereby reversed. Furthermore, to the extent that this opinion conflicts with the decision in *State v. Cut-*

*nose,* 87 N.M. 300, 532 P.2d 889 (Ct.App. 1975), that case is hereby overruled. We therefore remand this case to the Court of Appeals in order to address the remaining issues raised by the respondent.

IT IS SO ORDERED.

FEDERICI, C.J., SOSA, Senior Justice, and PAYNE and RIORDAN, JJ., concur.