1997-NMCA-056

943 P.2d 548

**INCA CONSTRUCTION COMPANY, INC., Petitioner–Appellant,**

v.

**Sam ROGERS as Chief of the New Mexico Occupational Health and Safety Bureau, and Cecilia Haynes, Franklin D. Gee, and Toby E. Pacheco as members of the New Mexico Occupational Health and Safety Commission, New Mexico Environment Department, and New Mexico Occupational Health and Safety Commission, Respondents–Appellees.**

No. 17239.

Court of Appeals of New Mexico.

June 2, 1997.

Amy Landau, Albuquerque, for Petitioner–Appellant.

Weldon L. Merritt, Geoffrey Sloan, Special Assistant Attorneys General, Assistant General Counsel, New Mexico Environment Department, Office of General Counsel, Santa Fe, for Respondents–Appellees Sam Rogers

and the New Mexico Environment Department.

Tom Udall, Attorney General, William R. Brancard, Assistant Attorney General, Santa Fe, for Respondents–Appellees NMOHSRC & its members.

## OPINION

BUSTAMANTE, Judge.

1. Inca Construction Company, Inc. (Inca) was a subcontractor on a United States Department of the Interior, Bureau of Reclamation (BOR) project located on land owned by the United States near Brantley Dam in Eddy County, New Mexico. Inca's work was primarily grading, backfilling, and earthmoving. On March 28, 1994, one of Inca's bulldozer operators struck a gas line and died as a result of the ensuing explosion. Both the United States Department of Labor (USDOL) and the New Mexico Environment Department (the Department) began investigations into the cause of the mishap. At the completion of its investigation, the Department cited Inca for alleged violations of New Mexico Occupational Health and Safety Act (NMOHSA). *See* NMSA 1978, §§ 50–9–1 to –25 (Repl.Pamp.1993). Inca sought to enjoin the Department from taking enforcement action pursuant to NMOHSA, and also sought to enjoin the New Mexico Occupational Health and Safety Review Commission from holding a hearing on the Department's administrative complaint against it. Inca argued that the Department did not have jurisdiction to issue the citations and that, consequently, the Commission does not have jurisdiction to hear the merits of the complaint. The district court denied Inca relief and we now affirm.

## ANALYSIS

■ 2. A state may assert occupational health and safety jurisdiction under state law and supplant federal jurisdiction through the submission and approval of a state plan which meets the requirements of 29 U.S.C. § 667 (1977). *See Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 97, 112 S.Ct. 2374, 2382, 120 L.Ed.2d 73 (1992); *see also United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.,* 32

Cal.3d 762, 187 Cal.Rptr. 387, 393–94, 654 P.2d 157, 163 (1982) (en banc) (approved state plan does not confer federal power on state, but merely removes federal preemption so that state may exercise its own sovereign powers over occupational safety and health). New Mexico submitted a plan pursuant to this congressional directive which was "certified effective December 4, 1984." 29 C.F.R. § 1952.362(n) (1996). Thus, the Department has general authority to enforce NMOHSA throughout the state unless limited by a specific constitutional or legislative provision.

3. Inca advances three reasons why the Department does not have authority to cite it for violations of NMOHSA. First, it asserts the Department's ability to enforce NMOHSA is expressly limited by Section 50–9–23 in that BOR regulated its employee health and safety practices. Second, Inca argues that the project site was an area of exclusive federal jurisdiction. Finally, Inca maintains it denied the Department access and, that as a consequence, the Department lost authority to enforce NMOHSA.

## SECTION 50–9–23

■ 4. In enacting the NMOHSA, the New Mexico legislature expressed a desire to "assure every employee safe and healthful working conditions." Section 50–9–2. To achieve this purpose, the legislature authorized the establishment of health and safety regulations, provided for education and training programs, and sought to develop reporting procedures. Section 50–9–2(A), (C), (D). More importantly, with regard to the question we answer today, the legislature sought *effective enforcement* of health and safety regulations. Section 50–9–2(B) (emphasis added). This statutory purpose provides the backdrop against which we consider Inca's claim that it was regulated by BOR and thus falls within the statutory exception of Section 50–9–23(A).

5. Section 50–9–23(A) provides:

The Occupational Health and Safety Act [50–9–1 to 50–9–25 NMSA 1978] and regulations promulgated under it do not apply to a specific activity of an employer or to a specific occupational health or safety condi-

tion of his employees if the specific activity or specific occupational health or safety condition is subject to the jurisdiction of and is regulated by:

A. any federal agency except the United States department of labor acting under the provisions of the Occupational Safety and Health Act of 1970 (84 Stat. 1590)[.]

This language plainly suggests that the legislature intended to subject New Mexico employers to only one set of regulations, be it state or federal. As long as some governmental entity is effectively enforcing a set of health and safety regulations designed to assure every employee in New Mexico a safe and healthy work environment, the purposes of NMOHSA are served. The question we address is whether Inca was "regulated" by BOR within the meaning of Section 50-9-23.

■ 6. Section 50-9-23(A) is New Mexico's corollary to 29 U.S.C. § 653(b)(1) (1977) which limits the application of the Federal Occupational Safety and Health Act (FedO-SHA) when "other Federal agencies, and State agencies ... exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." While the wording of the two statutes is not identical, their intent is the same: that is, to avoid duplication of enforcement by agencies that regulate employee health and safety. Inca has not pointed out and we did not locate (and are not aware of) any New Mexico cases interpreting Section 50-9-23(A). In the absence of New Mexico authority on point, New Mexico's statutes are often interpreted in harmony with their federal counterparts. *See generally, Griffin v. Guadalupe Med. Ctr., Inc.,* 123 N.M. 60, 63, 933 P.2d 859, 863 (Ct.App.1997). *See* Mark A. Rothstein, *Occupational Safety and Health Law* § 20, at 22 (3d ed. 1990) [hereinafter Rothstein]; Occupational Safety and Health Law 795 (Stephen A. Bokat & Horace A. Thompson III, eds., 1988) (hereinafter Bokat & Thompson).

■ 7. There are three criteria which must be met to demonstrate a FedOSHA exemption pursuant to 29 U.S.C. § 653(b)(1). Rothstein at 23; *see also* Bokat & Thompson at 795 (describing comparable test). First, the employer must be covered by another federal act directed exclusively at employee safety and health *or* directed at public safety and health with the employees directly receiving the intended protections of the act. Second, the other federal agency must have exercised the statutory grant of authority. Finally, the other agency must have acted in furtherance of actual enforcement sufficiently to exempt the cited working conditions from FedOSHA jurisdiction without compromising work place safety. These three requirements serve the purpose of Section 50-9-23(A), and we adopt them as the prerequisites for an exemption from NMOHSA pursuant to that section. We note Inca has not suggested any addition or alternative criteria for consideration.

8. In support of its argument that BOR *regulated* its construction activities within the meaning of Section 50-9-23(A), Inca relies on various federal statutes and agency promulgations including the Reclamation Act, the Construction Safety Act, and BOR Construction Safety Standards. Our review of all the authorities advanced does not convince us that BOR regulated Inca sufficiently to invoke the exemption of Section 50-9-23(A).

9. The Reclamation Act itself does not vest BOR with any authority to promulgate health and safety regulations. *See* 43 U.S.C. § 371 (1997). Instead, as Inca admits, it only grants the Secretary of the Interior the authority to pursue and manage reclamation projects. Thus, under any view, the Reclamation Act does not support the application of a Section 50-9-23(A) exemption.

10. Similarly, the Construction Safety Act (CSA) and the regulations promulgated pursuant to its authority, do not support Inca's position. *See* 40 U.S.C. § 333 (1997). Like NMOHSA, FedOSHA, 29 U.S.C. §§ 651–678 (1997), was enacted "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions[.]" 29 U.S.C. § 651(b); *see also Cleveland Elec. Illuminating Co. v. Occupational Safety & Health Review Comm'n,* 910 F.2d 1333, 1335 (6th Cir.1990). Pursuant to 29 U.S.C. § 655, the Secretary of Labor has promulgated occupational safety and health

standards, otherwise known as "general industry standards." *See* 29 C.F.R. Part 1910 (1996); *see also Reich v. Simpson, Gumpertz & Heger, Inc.*, 3 F.3d 1, 4 (1st Cir.1993). The Secretary of Labor, not the Secretary of the Interior, is authorized to adopt industry-specific standards from other federal statutes and regulations, 29 U.S.C. § 652(10), and did adopt standards for construction work from the CSA. *Cleveland Elec.*, 910 F.2d at 1335; *see also Anthony Crane Rental, Inc. v. Reich*, 70 F.3d 1298, 1302 (D.C.Cir.1995). These regulations, as advanced by Inca, are more commonly known as the Construction Safety Standards (CSS).

11. Under the current regulatory scheme, the safety and health provisions authorized by the CSA and implemented by the CSS are enforced by the USDOL, not the Department of Interior or its subagency BOR. Since the USDOL is charged with their creation and enforcement, the CSS and CSA are inapplicable in this case because they have been supplanted through operation of the approved state plan we previously described. As a result of the adoption and approval of the plan, 29 C.F.R. § 1952.362, New Mexico, since at least 1984, has preempted all federal standards whether they are the general standards found in Part 1910 or the industry-specific standards found in Part 1926. New Mexico's approved plan also preempts BOR's reclamation instructions and the Department of Interior Manual, as advanced by Inca, which derive their authority from FedOSHA and its accompanying regulations. *See* 29 U.S.C. §§ 651–678; 29 C.F.R. Part 1960 (1996). Thus, Inca has failed to show that it was covered by any act not administered by USDOL.

12. Inca has also failed to show it was subject to any BOR regulatory enforcement procedures. Inca argues that the BOR was conducting an investigation of the explosion as evidenced by certain documents BOR provided to the Department and USDOL. The documents do not support this view. Instead, they only show that BOR was assisting the Department and the USDOL in determining which of those two should conduct the accident investigation. For example, the letter from Garry M. Rowe, BOR Projects Man-

ager, in addressing "some concerns from the State of New Mexico that the accident may have occurred on non-[f]ederal lands" indicated that the "area which [Inca] was working in at the time of the accident [fell] within the boundaries of Federal lands." This letter and the federal investigator's notes do not indicate BOR was taking any enforcement action. Therefore, the district court's finding that Inca was not "regulated by [ ] any federal agency other than the United States Department of Labor[,]" is adequately supported.

13. Finally, as Inca acknowledges, the only recourse BOR has for a violation of the CSA or CSS is "the right to cancel Inca's contract[.]" Contractual obligations are separate and distinct from issues of employee health and safety compliance. Although a contract may include safety requirements, their absence or presence does not absolve the employer from complying with the mandates of existing statutory and regulatory pronouncements. We do not believe cancelation of a contract is the type of "effective enforcement" contemplated by the New Mexico legislature in NMOHSA. We hold that BOR did not "regulate" Inca sufficiently to invoke the exemption of Section 50–9–23(A).

## DEPARTMENT JURISDICTION ON FEDERAL LAND

14. The explosion occurred on BOR property acquired by the United States prior to New Mexico's statehood. Inca argues that federal acquisition of the property necessarily resulted in exclusive federal jurisdiction and therefore, the state can only acquire regulatory enforcement authority over the property by express relinquishment by the federal government. We do not agree.

15. There are three principal methods by which the federal government acquires ownership and some measure of jurisdiction over state lands. *See State v. McCormack*, 100 N.M. 657, 659, 674 P.2d 1117, 1119 (1984). "First, land may be purchased pursuant to the purposes stated in Article I, Section 8, Clause 17 of the United States Constitution [the "Enclave Clause"]; second, by purchase without obtaining consent of the State; third, a state may cede the land to the government." *Id.* Acquisi-

tion by the federal government through any of these three methods, however, does not necessarily result in "exclusive federal jurisdiction." *See, e.g., State ex rel. Children, Youth & Families Dep't v. Debbie F.*, 120 N.M. 665, 667, 905 P.2d 205, 207 (Ct.App.), *cert. denied*, 120 N.M. 715, 905 P.2d 1119 (1995); *McCormack*, 100 N.M. at 659, 674 P.2d at 1119. Instead, as a general rule, federally owned lands physically located within a state are subject to state jurisdiction. *See Kleppe v. New Mexico*, 426 U.S. 529, 543, 96 S.Ct. 2285, 2293–94, 49 L.Ed.2d 34 (1944) ("Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory[.]").

■ 16. Inca has failed to show that the federal government had "exclusive jurisdiction" over the Brantley Dam site. First, its reliance on 1912 N.M.Laws, chapter 47 is misplaced. This now-repealed chapter granted blanket consent for the federal government to purchase state lands through the Enclave Clause.[1] Inca has failed to show that the property was subject to or acquired under this provision. Both parties agree that the subject property was purchased from a private party prior to statehood in 1905. There was no provision in 1912 law providing for its retroactive application to prior purchases. *Cf. McCormack*, 100 N.M. at 659, 674 P.2d at 1119 ("When New Mexico became a state, it acquired sovereignty and dominion over the lands of the United States within the State of New Mexico.").

17. Further, we note that state cession or consent usually occurs through specific legislative act. *See, e.g.* NMSA 1978, §§ 19–2–6 and –9 (Fort Bayard), 19–2–7 (cession of exclusive jurisdiction over Santa Fe National Cemetery), 19–2–8 (Fort Wingate and Fort Bliss), 19–2–11 (Holoman Air Force Base) (Repl.Pamp.1994). There has been no such

cession or consent with regard to the property on which Inca was working.

18. Alternatively, relying on N.M. Const. art. XXI, §§ 2 and 7, Inca argues that New Mexico has relinquished its authority over the subject property. Inca's reliance on these two sections is misplaced. First, N.M. Const. art. XXI, § 2 provides in relevant part that "[t]he people inhabiting this state do agree and declare that they forever disclaim all *right* and *title* to the unappropriated and ungranted public lands lying within the boundaries thereof. . . ." (Emphasis added.) This section clearly relates to the ownership of the lands. It does not address state jurisdiction to enforce health and welfare regulations to activities on the land. Next, section seven of this same article provides in relevant part that "[t]here are hereby reserved to the United States . . . all rights and powers for the carrying out of the provisions . . . of the [Reclamation Act] . . . to the same extent as if this state had remained a territory." There is nothing in the record before us and Inca does not advance any authority which demonstrates that the Department's jurisdiction at the work site interferes or conflicts in any way with the "rights and powers" of BOR in the effective implementation of the Reclamation Act. *See* 43 U.S.C. § 371. In any event, neither of these two constitutional sections address in any way the transfer of exclusive jurisdiction to the United States. Accordingly, we hold that the federal property in question was not an area of "exclusive federal jurisdiction" for purposes of applying NMOHSA.

## DEPARTMENT ACCESS TO THE PROPERTY

■ 19. Under the approved state plan, the USDOL retains discretionary authority with regard to enforcement related to any

---

1. 1912 N.M.Laws, ch. 47, § 1 provided:
   That the consent of the State of New Mexico is hereby given, in accordance with the seventeenth clause, eighth section, of the first article of the Constitution of the United States to the acquisition by the United States, by purchase, condemnation, or otherwise, of any land in this State required for sites for custom houses, court houses, postoffices, arsenals, or other public buildings whatever, or for any other purposes of the government.

1912 N.M.Laws, ch. 47, § 2 provided:
That exclusive jurisdiction in and over any land so acquired by the United States shall be, and the same is hereby, ceded to the United States for all purposes except the service upon such sites of all civil and criminal process of the courts of this State; but the jurisdiction so ceded shall continue no longer than the United States shall own such lands.

contractors or subcontractors on any Federal establishment where the State cannot obtain entry or where the state is refused entry and is unable to obtain a warrant or enforce the right of entry. 29 C.F.R. § 1952.365 (1996) (level of federal enforcement). Inca maintains that its employees objected to the Department's entry and continuing investigation but allowed the investigation to continue because its employees didn't think they could keep the Department out due to the physical layout of the accident site. Inca further asserts that the Department's assertion of jurisdiction might have been supportable "in the 'wild west' under a theory of 'frontier justice' " but is untenable under current state and federal law. Inca's arguments are unpersuasive.

20. Within constitutional limitations, the Department's authorized agents, upon presentation of proper credentials, are generally authorized to enter and inspect any place of employment at reasonable times without delay. *See* § 50–9–10(A)(1). Any employer wishing to deny access must expressly communicate its objections to the Department's representatives. Having been denied access, the Department can then seek an inspection order or ask the USDOL to exercise its discretionary authority pursuant to 29 C.F.R. § 1952.365.

21. The trial court found that the Department "could and did obtain entry onto Inca's work site." We interpret "could" as a reflection of the district court's decision that the Department had jurisdiction over the site. We interpret "did" as a factual finding that the Department appropriately gained entry to the site.

> Findings of fact made by the district court will not be disturbed if they are supported by substantial evidence. 'Substantial evidence' means relevant evidence that a reasonable mind could accept as adequate to support a conclusion. [We] resolve all disputed facts and indulge all reasonable inferences in favor of the trial court's findings. Moreover, in reviewing a challenge to a finding, it is the evidence supportive of the finding, not that which is adverse, that usually decides the issue. We will order a reversal only if the trial

court has clearly abused its discretion. An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case.

*Sims v. Sims,* 122 N.M. 618, 633, 930 P.2d 153, 168 (1996).

22. In this case there is substantial evidence supporting the trial court's factual determination that the Department obtained entry to the accident site. Inca admits that it "did not require NMED personnel to obtain a court-issued Inspection Order." Further, the Department's investigator Dan Stone stated in his affidavit that had Inca's employees indicated they were denying him access, he would have followed the Department's policy to cease the investigation and refer the matter to the Department's general counsel.

## CONCLUSION

23. We affirm the trial court's decision denying Inca's petition for a writ of mandamus and injunctive relief.

24. **IT IS SO ORDERED.**

APODACA and FLORES, JJ., concur.

